Thank you, Your Honor. My name is William Groskopf, and together with Adam Tuchman, we represent Metro Industries and Liberty Mutual Insurance in this appeal seeking vacator of Arbitrator Rossi's March 24, 2017 award in favor of OPI. Now, I want to start at the beginning of my argument by sort of refreshing or making it clear to this court that this is not the standard run-of-the-mill case where one party is disputing entitlement that was awarded by the arbitrator to the other party. And just to – I know it may have been a little while given the distance from the original argument, but this is a – I know this is difficult to make out, but we didn't want to do screen sharing. This sort of summarizes our case from a conceptual standpoint in a nutshell. These large precast pieces that are being supported by the excavator, these were made by OPI, and they turned out to be defective. And that's what the arbitrator determined, resulting in Metro having to fix these large precast pieces. Now, in fixing these pieces, given the fact that they weigh 24 tons, you can imagine it involved the use of both equipment and it involved the use of men and other material. So let me interrupt for a moment. Yes, Your Honor. I thought the arbitrator was impressed with the fact that the equipment was already there on the site and you didn't have to rent it. It was always there. Tell me if he was wrong about that. Your Honor, the arbitrator was not wrong about the equipment being on site, but a point that I would make is that these men that he awarded all of the costs to were also on site for the full duration as well. In other words, both the men and the equipment were there on site the entire time. Excuse me, counsel. The men were, you had originally placed a similar looking piece in the ground, correct? And then you had to take that one out and put the new one in, right? In this instance, yes, with EWS number 9. So you had labor costs that were specifically identified to the additional work. The question is, did you have equipment costs that were specifically identified to the work? So let me ask you, was the crawler that you have in that picture, was that continuously on the job site? It would have been continuously on the job site. Was there any? I know you had to use it to put the box in the second time, but the question is, were there costs associated with that? I can understand why you want to charge for it, but the question is, did the arbitrator make some kind of crazy decision such that he manifestly disregarded the law? So let me ask you this. Did you make an assertion that that crawler could have been doing something else on the job site while it was doing this particular work? Yes, to clarify, Your Honor, the position was made that the crawler and the other, like, similar pieces of equipment, they would have been performing the base scope work within the contract in which, in that instance, the crawler and the other... Why don't you try answering my question? Did you make a claim that that crawler could have done something else, which was covered by the contract for which you were charging the county? Was there a claim that that crawler could have been doing something else while it had to do this work? No, there was no claim that the crawler could have been doing anything else when it's doing this work, because while it's doing contractual work, it can't do... I understand your argument. So if you want to use up all your time not answering my question... No, I don't. Okay, so was the crawler stored on the job site throughout the time of the contract with the county? Yes, the equipment was stored there on site. Was the cost of the crawler being on the job site, used or not used, a part of your cost that you incorporated with regard to the county? It would have only been included within the cost to the extent that it was performing work for the Rockland County Drainage Authority. The cost was not incorporated into our job cost report. In fact, the cost is not even in our job cost report to the county. Did you put that particular evidence in front of the arbitrator to make a claim that literally just the cost of using the crawler was separate and not covered by the cost incorporated within the contract that you had with the county? We made clear to the arbitrator that the cost of the crawler is not something that is being separately itemized and billed out on a discrete basis to Rockland County. The cost is only incorporated into the overall bid as part of doing our work on the project. And we are remunerated for that crawler when it is doing base scope work. I have a more kind of basic question. You have a very heavy burden to show manifest disregard of the law here. And what it seems to me you need to show is that the arbitrator's decision didn't reflect, at least a plausible reading of that decision, didn't reflect a reasonable basis in the law. You have the initial burden of showing a stable foundations for a damages claim as well as a subjective element. I'm having trouble seeing either that you showed a subjective element or that the arbitrator wasn't within his right to conclude that you had not provided a stable foundation for a damages claim. Could you address both of those elements? First, the subjective foundation or the subjective element and then the stable foundation? Yes. The stable foundation aspect of your question, Your Honor, concerns the fact that we offered industry standard estimates, blue book estimates, which is and you have to when you're looking at the subjective standard, as you know, under the DeFerco test, you ask yourself whether the error that was made by this arbitrator would have been so obvious, so patently obvious that it would have sort of jumped off the page to the individual, to the arbitrator who would have been qualified. And I underscore the word qualified to hear this dispute. An arbitrator qualified to hear this dispute? You all chose the arbitrator together, right? And you chose not to have a transcript. You chose the arbitrator. He had experience. Why couldn't a reasonable arbitrator have concluded that the estimates, the other material before him was inadequate to support a damages claim, even agreeing with that your opponent was at fault? Well, it comes down to the barely colorable justification. I believe that's what Your Honor is referring to, that we need to show that it was not a barely colorable justification in the arbitration award. I'll briefly go through what they offered. We offered a stable foundation, which is what New York law requires, and we used standard estimating practices, which he accepted in all other regards, but he utilized an actual cost or an actual damages test. So he says that in the face of the award. You have that evidence in the face of the award. As to what they say, that there was not a stable or that there was a barely colorable justification, which we agree is the standard. She goes through several items. First of all, she notes the fact that, well, they did dispute the back charges and to which we say, well, but you lost on entitlement. And since you lost on entitlement, that there's no more. He said she said is to entitlement. We've won on because you're low on time. And I understand that's the subjective element that you're just saying that the decision was so far outside of New York law that that itself establishes the subjective element. That is what I'm claiming, Your Honor, is that the standard is so far outside the bounds for any qualified arbitrator with 10 years of experience in the industry to not know that you can use reasonable estimates and you don't have to have actual damages. That is what I'm saying. And if there was no fairly colorable justification, which we set forth in detail in our brief. But your position basically is that manifest disregard doesn't require subjective element, because if you've shown that it's wrong on the law, that that establishes the subjective wrongdoing misconduct. Is that right? Correct. Your honor, my argument is essentially that under the test, which is very clear that it says if the error was so obvious that it would have stood out to an arbitrator qualified to hear this case. But if it is so blatantly obvious, then that meets the subjective test. In other words, arbitrators so rarely, as they recognize the Halligan come out and say, I decided to ignore the reasonable degree of certainty test. I decided to ignore the role that when you've got the fact of damages and you've got you've got both entitlement and you've got the fact of damages that we're going to ignore that and apply an actual damages test in a construction case. They always involve that. So, yes, we believe that. Thank you, counsel. Your time has expired. You've reserved 1.5 minutes for rebuttal. We'll hear from. Council. Good morning, your honors this morning, I think Metro and Liberty is suffering from what we all anticipate is an extremely high burden here. And to this, they're doing that based on a very narrow interpretation of a phrase within the language of the award itself. They refer repeatedly to an actual damages standard when when read in the entire context of the award. It's clear that the arbitrator Rossi was really seeking to reject the proposition and the proper evidence as tendered by Metro and Liberty. And that is it specifically the arbitrator Rossi specifically said that he found that the evidence as proper, which is Metro's and Liberty's burden of proof here to establish that they actually sustained damages was insufficient and unreliable. While they while Metro takes the position that, you know, if we don't rehash the entire undergoings of an arbitration where there's literally no record to establish its position, then absent that. Old castle must go and rehash that arbitration. I disagree. I think it's completely. Why wasn't it a stable foundation for damages award for your opponent to adduce estimates about, you know, blue book estimates that are used as a standard matter in evaluating costs incurred for quick owned equipment usage? Well, in this case, as the court already noted, the equipment was already on site. Old Castle's obligation was to fabricate and provide these culverts. It wasn't obligated to install it. So all the equipment that was utilized here was already on site. In addition, as noted in the award itself, they, there was questions as to what was implied in a council raised it again, that the cost of having this equipment on site was included in the overall cost of the contract. And therefore, it was incorporated within overhead costs. And in fact, Arbitrator Rossi noted how the overhead costs that was being submitted by METRA was being submitted in a multitude of forms. It was submitted in a 41% increase on its labor costs. It was submitted again under a separate line item for benefits, and then it's being submitted with these equipment costs. I think Arbitrator Rossi was well within his rights to accept or reject the evidence as presented based on the testimony and what was before him, which none of us have before us. There was, and in my opinion, there was a colorful justification for his findings. I think it's an extremely dangerous proposition to have the court rehashing an arbitration where there's no record or insufficient facts before the court as to what was actually presented. And in fact, I think his narrow interpretation of the failure to sustain actual damages is not of such a foreign clause. And in fact, it's found in two recent Second Department cases in New York State that where the plaintiff failed to establish its actual damages. I think that reference is being largely used out of context. Those cases are Lewin versus Levine, and as well as RMP Capital versus VictoryJet, both of which are Second Department cases. Ms. Havas, I'm a little concerned that your argument about the import of the absence of a transcript suggests that unless a transcript is made, a party wanting to challenge an arbitration decision can never make a claim of manifest disregard or other qualities that would cause the arbitration award to be tossed out. Do you see any limits to your position about the import of an absence of a transcript? I think in this case, the transcript is necessary because we're dealing with damages. I think if you're saying manifest disregard of the law, it would require some kind of affirmative evidence to establish what was before the arbitrator and then to demonstrate what was rejected or tossed out. Well, we certainly... I'm sorry. Go ahead and finish. I apologize. Go ahead and finish your thought. No, in this case, we can't show what was presented to the actual arbitrator. And part of that failure to establish we can't weigh, which would have been the credibility of the witnesses, which may not be apparent from the transcript. But I think that's a factor here because he found the testimony unreliable. We do know from their submissions that, and we do know from the award, that if they did have to rent equipment, the arbitrator allowed it. Yeah. And we do know that notwithstanding some of the reductions that the arbitrator made with regard to labor costs, the arbitrator awarded labor costs that were associated with work that was done to install sections that complied with the specifications and or to modify sections that were already in the ground that had specification problems. So we know that. And we also know that the arbitrator talked about the fact that he was not going to award damages for equipment that was already on the site. So, I mean, it seems apparent to me that there's at least some reflection of his thinking. And we know from my questions to your opponent that there was no claim that there was work that the crawler or any other equipment could have been performing that caused them to then have additional costs associated with equipment that was on site or other job opportunities off site that they had to forego or they had to supply rental equipment to supplement that. So, you know, you have a breach and you have consequential damages. And New York law requires some proof of a causal relationship with regard to the consequential damages, which is why I asked the question. If we could for a second, I want to talk about interest, prejudgment interest. Why aren't the terms of your bid and your terms and conditions binding on you and limiting your prejudgment interest to 6 percent? It was up until the time that the case was filed and presented to the to the district court. And and it was in the after that point in time, we were entitled to submit interest under the CPLR, which is what was presented. Okay, so 9 percent was only from the time of the district court's confirmation of the award. Is that the argument? Yes, or I apologize. Your honor, I would not I believe that was what what was submitted. Okay, now you throw me a little bit of a curveball. I've got to go back and check that because I'm not certain that that's what happened. But so but your position today is that you're only entitled to the CPR interest from the time of the from the time of the application to for confirmation of the award in front of the in front of the district court. Is that it? I'm sorry. I, I, I'm not really sure at this point. I apologize. I, I'm just not clear. I'm going to have to rest on whatever my brief says. All right. Fair enough. Prepared on this point. I have. Okay. No. Well, I know everybody focused on that, but I, to be honest with you, I'm where I have. I think there's more confusion around the interest rate to some degree than there is around the arbitrators award. That's just me personally. But maybe. Okay. Could you address the basis that you're claiming attorneys fees? I looked at the payment bond. Section 717273 and 8. And it looked to me like it was only as to undisputed amounts. That you might be entitled to recover fees. Could you explain? Sure. To me at this point, I'm only seeking legal fees for the cost of the appeal. At this point, there's been a determination on the merits, but for the arbitration, which the Liberty willingly agreed to submit that portion of the claim to the arbitration. And I'm only seeking. And at this point, it has now been determined as determined by the lower court. I'm seeking an award for legal fees only for this appeal. And that's based solely upon at this point. It's been determined. It should be. Undisputed by the court below, at least that. And it has been determined based upon their willingness to submit to the arbitration that we should be entitled to legal fees solely for the cost of. Excuse me. I'm sorry. Wouldn't that issue goes to the district court 1st? Since it hasn't had a chance to rule on it. I will. I'm only because I'm seeking legal fees only for the appeal. No, I wouldn't have submitted it to the district court. All right. Well, your time has expired. Thank you very much. Thank you. Mr. Gross up. Can you enlighten us on the 9% interest when it was triggered? Certainly your honor in terms of the trigger date. I believe that the trigger date for the 9% was from the after the proposed judgment for prejudgment interest. That's what it is for prejudgment interest. So, it would go back for everything prior to the date of arbitrator. Excuse me of judge Rossi's opinion. And I'd like to read in that regard what OPI actually argued in their briefing to the arbitrator about the interest. They said that section 4 of the terms and conditions provides that Metro would pay interest at the rate of 0.5% per month compounded monthly on any unpaid balances under the contract. That's in J.A. 664 paragraph 2021 of a brief. Now, that's the exact same 6.5% when you multiply it out that we argued for. But now she seems to be arguing for an entirely different rate. And furthermore, the case is also hold in the Wagner matter. There were the contract itself applies an interest rate. It's that contract rate of interest that is to be applied rather than CPLR 5004. And very briefly. Could you address please on that though? What you raised in the district court? I didn't think that you had addressed that in the district court. What position were you taking the court about interest? In the district court, Judge Carney, we argued as we are now that you have to take the contract rate of interest and apply it. And not the 9% interest rate that she was arguing for at the district court level. In other words, I thought, excuse me, but I thought that you had argued for a 4% interest rate determined by the arbitrator, not the contractual rate. Is that wrong? Well, I think that what we did, I think that what we said is that with the arbitrator having made a contractual determination, and we've said all along that the judges contractual interpretation should stand as they are. We've maintained that position throughout. And so our argument at the district court level was the same one that she's advancing and that we're advancing, frankly, which is where the arbitrator makes an interpretation of the contract. That interpretation should not be revisited on appeal. And so he had found 4% interest. So we were arguing for the 4% interest. But we said at a minimum, the maximum that could possibly be is the 6.5% interest, which Ms. Habeas herself and her client were advancing at the district court level. And so we're actually, we were in agreement on that issue. And then the judge awarded it off at the 9% level because she was trying to supplant the contract rate and use instead the 9% rate supplied under 5000 for your honor. So you were defending the arbitrator's 4% while trying to preserve the 6% argument and just to rebut the 9% claim. I think that would be a fair summary. Yes. In other words, there's plenty of case law, as the court knows, that the contractual interpretations of the arbitrator are not to be revisited on appeal. And so the arbitrator had found 4% by virtue of interpreting the contract. And so we said that that 4% should be interpreted. But in any event, if you looked at the contract language, the most it would allow is the 6.5% interest. So you think it wouldn't be fair to characterize that as a shift in positions on appeal from what you presented to the district court? No, Your Honor. No, not at all. What we said is that the 6.5% interest, we argue that at the district court level, and we've argued that on appeal. She's argued 6.5% since ab initio with the arbitrator. Thank you. Thank you, counsel. We took most of your rebuttal. I'll give you one minute if you have anything to say in summary. If I do, Your Honor. I said you can take your minute and a half since we asked questions to use up your entire rebuttal. Thank you. Thank you very much, Your Honor. The point that I would like to return to since we focus mostly on interest is the legal standard for awarding damages in an arbitration. And we have to understand the backdrop of the situation. Every single one of these EWSs that we are putting before you in this arbitration, the amount of damages, or excuse me, the entitlement was found. Okay, that's item number one. The fact of damages was found for the equipment and for the labor. How do we know that the fact was founded to the equipment? Well, he found that where they breached the contract. Remember, when they breached, they're the wrongdoer. He found that when the equipment was rented, that that equipment was used in performing their work. Now, to Your Honor's prior point about being reimbursed for those costs, we don't get reimbursed for those equipment costs for our company-owned equipment costs that is not performing contract work. Okay, so when they damage or when they have a breach as a result of their defective pretest pieces, and we have to fix that. They get the equipment for free if it's rented. But if it's METRA-owned equipment, they get that for free or they get charged if it's rented. But if it's METRA-owned, they get it for free. That's totally illogical. There is no stable or we provided a stable foundation. The burden was then on them to come forward once we provided that stable foundation and as the wrongdoer to come back and say something, anything about our damages quantification. They said literally nothing. There's not one word in their papers during the course of the arbitration where they challenged our damages methodology. It all came after the fact. It all came after the fact. Thank you very much, Your Honor. Thank you. We appreciate argument from both counsel. We'll reserve decision.